ACTWU LOCAL 1627, AFL–CIO,
Plaintiff,

v.

Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.

Court No. 82–3–00400.

United States Court of International Trade.

April 19, 1984.

Richard A. Swack, pro se.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Sheila N. Ziff, Washington, D.C., on the brief), for defendant.

*On Plaintiff's Motion for Review of Administrative Determination Upon the Agency Record*

RE, Chief Judge.

Plaintiff, on behalf of its members who are former employees at the Cheektowaga, New York plant of Exide Corporation, contests a determination by the Secretary of Labor which denied certification of eligibility for benefits under the worker adjustment assistance program of the Trade Act of 1974, 19 U.S.C. § 2101–2487 (1976 and Supp. V 1981). Specifically, the Secretary determined that the former Cheektowaga plant employees were employed by a firm whose sales or production, or both, did not decline absolutely within the meaning of section 222(2) of the Trade Act of 1974, 19 U.S.C. § 2272(2) (1976); and that the firm's former employees did not produce an article "like or directly competitive" with an article adversely affected by increased imports within the meaning of section 222(3) of the Trade Act of 1974, 19 U.S.C. § 2272(3) (1976).

After reviewing the administrative record and arguments of the parties, the court holds that the Secretary's denial of certification is supported by substantial evidence, and is in accordance with law. Hence, the determination of the Secretary is affirmed.

On January 21, 1981, plaintiff, on behalf of its members, filed a petition with the Secretary for certification of eligibility for trade adjustment assistance benefits. In accordance with the provisions of section 221(a) of the Act, 19 U.S.C. § 2271(a) (1976), and 29 C.F.R. § 90.12 (1980), the

Secretary published a Notice of Receipt of plaintiff's petition and instituted an investigation. 46 Fed.Reg. 11384 (1981).

Section 222 of the Act provides that the Secretary shall certify a petitioning group of workers as eligible for trade adjustment assistance benefits if it is determined:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

Plaintiff's petition claimed that increased imports of automobiles contributed importantly to the decline in sales or production at Exide Corporation's Cheektowaga plant and to the eventual separation from employment of the workers, thereby entitling them to certification.

The Secretary's investigation disclosed that the Cheektowaga plant produced two types of lead acid batteries; automotive batteries for economy, mid-size and heavy-duty cars, and commercial batteries for trucks, buses and diesel-powered vehicles. Automotive batteries represented the predominant percentage of the plant's total sales in the period from January 1980 through May 1981. In 14 of those 17 months, sales of automotive batteries increased, compared with the corresponding months one year earlier. Similarly, commercial battery sales rose on a comparative basis in 18 of the 19 months examined from November 1979 through May 1981. Production of automotive batteries decreased in the first quarter of 1980, and increased comparatively in each of the succeeding four quarters. As to commercial batteries, production rose in each quarter of 1980 and the first quarter of 1981, compared to the corresponding quarters in the prior year.

The plant also prepared and distributed batteries for golf carts, lawn and garden equipment (golf cart batteries). These batteries were not produced at the Cheektowaga plant, but were shipped there from other Exide facilities for further processing. The Cheektowaga employees then filled the golf cart batteries with acid, charged, formed and labeled them in preparation for sale. Sales of these batteries increased relatively in 11 of the 19 months during the period from November 1979 through May 1981.

The Secretary's investigation revealed that imports of automotive batteries decreased absolutely in value in the period January through June 1981 as compared to the same months in 1980. Moreover, the ratio of imports to domestic production of these batteries was less than 3% in each year from 1976 through 1980. In addition, the investigation established that Exide did not import any of the three types of batteries in question for use at the Cheektowaga plant.

Employment figures show that the plant experienced an increase in the average number of production workers in 1980 compared to 1979, and for the months of January through May 1981 compared to the same period in 1980.

On the basis of these findings, the Secretary determined that plaintiff's members, and the other former Cheektowaga plant employees, did not satisfy the group eligibility requirements of section 222. Hence, they were not certifiable as eligible for adjustment assistance benefits. 47 Fed. Reg. 3646 (1982).

Thereafter, plaintiff sought administrative reconsideration of the Secretary's negative determination. In support of its application, plaintiff submitted a copy of its agreement with Exide concerning the closing of the Cheektowaga plant. Plaintiff maintained that the plant's closing was sufficient evidence to satisfy the eligibility re-

quirements of section 222, and, therefore, warranted an affirmative determination on certification.

The Secretary, in a letter dated March 12, 1982, denied plaintiff's application for reconsideration on the grounds that it was filed untimely. The Secretary stated that 29 C.F.R. § 90.18(a) (1980) provided for the filing of a request for reconsideration within 30 days of the date of publication of the notice of the Secretary's negative determination in the Federal Register. Plaintiff filed its request 40 days after the publication date. Consequently, the Secretary determined that plaintiff's request was untimely, and, therefore, barred.

In denying plaintiff's request as untimely, the Secretary informally advised plaintiff that the closing of the Cheektowaga plant would have satisfied the separation from employment and decreased sales or production criteria of sections 222(1) and (2) of the 1974 Act. Nevertheless, plaintiff's members would not have qualified for certification because the petition failed to meet the "contributed importantly" test of section 222(3). The Secretary explained:

> that the ratio of U.S. imports of automotive batteries to domestic production has been very low, averaging around two percent over the past four years. The Department also notes that although U.S. imports of automotive batteries increased ever so slightly in 1981, U.S. domestic production increased more than 218 times the increase in imports of batteries. Under the circumstances, one might question how increased imports could be an important factor in the plant's closing.

Although the Secretary acknowledged that increased importation of cars with batteries can have a serious economic impact upon the domestic production of automotive batteries, such as those produced by plaintiff's members, he concluded that the statute and pertinent case law mandated that the investigation be confined only to imports of batteries "not already incorporated in final articles." Thereafter, by letter complaint, plaintiff brought this action, pursuant to section 284(a) of the Trade Act of 1974, 19 U.S.C. § 2395(a) (Supp. V 1981), seeking judicial review of the Secretary's denial of certification.

Plaintiff advances three arguments for the reversal of the Secretary's negative determination. Initially, plaintiff maintains that the increase in the plant's sales, production and employment over the period investigated, as found by the Secretary, does not reflect the true situation at the Cheektowaga plant. Plaintiff asserts that sales, production and employment actually declined. Plaintiff also argues that the Secretary erred in not considering imported automobiles, containing automotive batteries, as the articles like or directly competitive with the batteries produced by its members. Lastly, it contends that the Secretary's interpretation and application of the law has resulted in dissimilar treatment of similarly situated workers.

Before discussing the merits, the court notes that the defendant, in his brief, has raised a question as to the court's power to hear this case. The Secretary asserts that the administrative proceeding is not complete inasmuch as he did not publish his determination on plaintiff's application for reconsideration in the Federal Register, as required by 29 C.F.R. § 90.18(e) (1980). The defendant, therefore, contends that plaintiff's suit is premature, and should be dismissed since it was not commenced within 60 days *after* the date of publication of the Secretary's final determination. Trade Act of 1974, § 284(a), 19 U.S.C. § 2395(a) (Supp. V 1981); 29 C.F.R. § 90.18(e) and § 90.19(a) (1980).

■ The court finds the Secretary's claim disingenuous. While the Secretary failed to comply with the publication requirement, he notified plaintiff of the negative determination and of its right to file suit to challenge that determination. No further administrative remedy was available to plaintiff under the statute or the regulations. The conclusion is inescapable that the administrative process was at an

end, and that a final determination had been made.

It is most apparent to this court that: the Secretary of Labor already has made his final determination; he has communicated it to the plaintiff; and the parties are now before the court. To order the Secretary to publish the required notice of his final determination would only exalt form over substance.

*Tyler v. Donovan*, 3 C.I.T. 62, 66, 535 F.Supp. 691 (1982). Hence, to dismiss this action, and order the Secretary to publish the notice, thereby requiring plaintiff to refile, would serve no useful purpose, and would delay the ultimate resolution of the case.

Initially, plaintiff claims that the Secretary erred in finding that sales, production and employment increased at the Cheektowaga plant during the period under investigation. Plaintiff attributes the bulk of these increases to work temporarily transferred to Cheektowaga because of a strike at Exide's Allentown, Pennsylvania facility. Plaintiff argues that if the Secretary had discounted the impact of the strike in his analysis, the data would have revealed a decline in sales, production and employment at the Cheektowaga plant.

The court holds that plaintiff's position is not sustainable. Under section 222 of the 1974 Act, the Secretary is empowered to determine if sales or production, or both, and employment declined at the firm being investigated. If they did, he must also determine whether the decline was caused by increased imports of goods like or directly competitive with those produced by the firm. The administrative record clearly evidences an increase, not a decrease, in Cheektowaga's sales, production and employment from January 1980 through May 1981. Consequently, based on those increases, regardless of the reason, the Secretary could only conclude that plaintiff's members did not meet the statutory requirements for certification.

Furthermore, acceptance of plaintiff's premise would require the court to speculate on how the 1980–1981 sales, production and employment figures would have differed absent the strike. Indeed, plaintiff has offered little evidence, other than mere allegations, to substantiate its claim. In view of the lack of proof, the court cannot and ought not engage in conjecture and sheer speculation. Trade Act of 1974, § 284(b), 19 U.S.C. § 2395(b) (Supp. V 1981).

The record also shows that the work transferred from Allentown only affected the sales and production of commercial batteries and the sales of golf cart batteries. Therefore, assuming *arguendo* that sales, production and employment increased at Cheektowaga because of this work, the Secretary's determination would not have changed because the sales and production of those types of batteries, individually and collectively, did not constitute the predominant percentage of Cheektowaga's total sales or production.

Plaintiff next advances the argument that the Cheektowaga plant was an original manufacturer of batteries specifically produced for use in new Chrysler cars. Plaintiff claims that Exide lost business, and its Cheektowaga plant suffered a decline in sales, production and employment because of a curtailment in orders from Chrysler. Plaintiff directly attributes this reduction in orders to Chrysler's loss of business and decreased production resulting from increased import penetration by foreign cars. This assertion has no support in fact or in law.

The administrative record contains a vague reference by the Cheektowaga plant manager that the impact on the plant was strictly through the automotive market since a battery is an integral component of an automobile, whether foreign or domestic. Likewise, there is a statement by plaintiff's business agent concerning the direct impact of automobile imports on declining production, lost business and layoffs at the plant. Again, these unsubstantiated assertions are wholly insufficient to sustain a finding by the Secretary that

would justify the certification of plaintiff's members.

Furthermore, the references to the impact from the automotive market cannot support an affirmative determination since there is no question that a component, such as an automotive battery, is not like or directly competitive with imports of the completed article, i.e., a car. *United Shoe Workers v. Bedell*, 506 F.2d 174 (D.C.Cir. 1974); *Machine Printers and Engravers Ass'n v. Marshall*, 595 F.2d 860 (D.C.Cir. 1979); *Morristown Magnavox Former Employees v. Marshall*, 671 F.2d 194 (6th Cir.1982); *Gropper v. Donovan*, 6 C.I.T. ——, 569 F.Supp. 883 (1983).

That Exide and its parent company, Inco Electric Energy Company (Inco), and Chrysler are linked in an economic sense is true. However, Exide and Inco are independent of Chrysler in the corporate sense. Without that corporate relationship, *i.e.*, being owned or substantially controlled by Chrysler, Exide's former Cheektowaga employees, and in particular, plaintiff's members, cannot qualify for certification under section 222. *See Machine Printers and Engravers Ass'n, supra* at 862.

Plaintiff's final contention is that the Secretary's interpretation and application of the statute has resulted in dissimilar treatment of similarly situated workers. Plaintiff bases its claim for certification upon the Secretary's affirmative determinations involving the employees of two other original car equipment manufacturers, Fedders Automotive Components Company of Buffalo, New York, and Harrison Radiator Division of Lockport, New York. Specifically, plaintiff contends that if an automotive radiator and air-conditioner were found to be integral components of a car, thereby rendering the workers manufacturing them certifiable as eligible for adjustment assistance benefits, then an original equipment automotive battery must be accorded similar treatment, and the Cheektowaga employees also are entitled to certification.

Plaintiff's reliance on these administrative determinations is misplaced. In *Fed-

ders*, certification was granted not because an automotive radiator was an integral part of an automobile, as argued by plaintiff here. Rather, certification was had because imports of automotive *radiators* had increased, and Fedders' major customers had reduced their *domestic* purchases in favor of foreign sources. In essence, the Secretary found that an automotive *radiator*, not an automobile, was the like or directly competitive article subject to import injury. 47 Fed.Reg. 20223, 20224 (1982).

In *Harrison Radiator*, certification was obtained because the company was an integrated component parts plant of General Motors, and not an independent supplier of parts. There, the record established that a significant portion of Harrison's output was for use as components in one or more of General Motors' car and truck lines adversely affected by imports. Therefore, the Secretary concluded that the workers were employed by a "firm" which produced, or had an "appropriate subdivision" which produced an import-impacted article. 46 Fed.Reg. 10025 (1981).

While the court sympathizes with plaintiff's members, it "must be faithful to the legislative will and is 'bound by what Congress has enacted.'" *Woodrum v. Donovan*, 564 F.Supp. 826, 830 (C.I.T.1983), *appeal docketed*, No. 84–651 (Fed.Cir. Dec. 1, 1983), citing *Machine Printers and Engravers Ass'n, supra* at 862. In reviewing the legislative intent and judicial precedents interpreting section 222, this court has stated that:

[i]f anomalies or inequities exist in the law, permitting the certification of service workers in integrated manufacturing companies, but precluding certification of similarly situated workers in independent companies, they result from the express language of the statute. In the light of a carefully worded statute whose meaning is clear, the solution is not to be found in strained interpretation or judicial legislation.

*Woodrum, supra* at 833.

In short, any distinction in the classification of workers certifiable for adjustment

assistance benefits emanates from the statute, and not from its interpretation and application by the Secretary. *Id.*

Section 284(b) of the Trade Act of 1974, 19 U.S.C. § 2395(b) (Supp. V 1981) empowers the court to review a decision by the Secretary denying a petition for certification of eligibility trade adjustment assistance benefits to assure that the determination is supported by substantial evidence contained in the administrative record, and is in accordance with law.

The court has reviewed the decision of the Secretary of Labor and holds that the Secretary's denial of certification is supported by substantial evidence, and is in accordance with the trade adjustment assistance provisions of the Trade Act of 1974. Accordingly, the determination of the Secretary is affirmed, and plaintiff's action is dismissed.