ILWU LOCAL 142, PLAINTIFF *v.* RAYMOND J. DONOVAN, SECRETARY OF LABOR, UNITED STATES, DEFENDANT

Court No. 83–5–00779

Before RE, *Chief Judge.*

ON DEFENDANT'S MOTION FOR REHEARING

(Dated March 13, 1986)

*King, Nakamura & Chun-Hoon (James A. King ),* for the plaintiff.
*Richard K. Willard,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch *(Sheila N. Ziff ),* for the defendant.

RE, *Chief Judge:* Pursuant to Rule 59(a) of the rules of this Court, defendant has moved for a rehearing of the decision in *ILWU Local 142* v. *Donovan,* Slip Op. 85–127 (Dec. 11, 1985).

In the *ILWU Local 142* case, plaintiff, on behalf of former employees of the Puna Sugar Company, challenged the Secretary of Labor's denial of certification of eligibility for benefits under the trade adjustment assistance program, 19 U.S.C. §§ 2271–2321, 2395 (1982 &

Supp. I 1983). The court held that the Secretary's determination that increases of imports did not contribute importantly to the workers' separation from employment was not supported by substantial evidence contained in the record, and was not in accordance with law. Hence, on plaintiff's motion, the court vacated the Secretary's determination, and remanded the case to the Secretary for a redetermination of eligibility for trade adjustment assistance benefits. Slip Op. 85–127, at 14.

In the present motion, defendant contends that the court failed to address several issues raised in defendant's opposition to plaintiff's motion. First, defendant contends that Puna produced refined sugar, and that under 19 U.S.C. § 2272(3) "the import-impacted article must be the commodity that is *marketed,* not the article at an intermediate processing stage prior to marketing." Second, defendant contends that increased imports of raw sugar could not have contributed to the workers' separation from employment because those imports were destined for the export market under the drawback provision of 19 U.S.C. § 1313. Defendant also contends that "the fact that *other* workers producing raw sugar at *other* companies in Hawaii were certified in 1977 is irrelevant to the pending case and cannot 'provide a precedent' for certifying the workers at Puna."

After careful review of defendant's motion, the Court holds that defendant has not satisfied the requirements for the granting of a rehearing, and the motion is denied.

The cases make clear that whether a motion for rehearing shall be granted or denied lies within the sound discretion of the court. *Oak Laminates* v. *United States,* 8 CIT 300, 601 F. Supp. 1031, *denying reh'g to* 8 CIT 176 (1984), *aff'd,* No. 85–1873, slip op. (Fed. Cir. Feb. 11, 1986); *see also Reynolds Trading Corp.* v. *United States,* 61 CCPA 57, 59, C.A.D. 1120, 496 F.2d 1228, 1230 (1974). In addition, Rule 59(a) of the rules of this Court provides that a rehearing may be granted "for any of the reasons for which rehearings have heretofore been granted in suits of equity in the courts of the United States * * *."

In *W.J. Byrnes & Co.* v. *United States,* 68 Cust. Ct. 358, C.R.D. 72–5 (1972), the appropriate grounds for the granting of a rehearing were set out as follows:

A rehearing may be proper when there has been some error or irregularity in the trial, a serious evidentiary flaw, a discovery of important new evidence which was not available, even to the diligent party, at the time of trial, or an occurrence at trial in the nature of an accident or unpredictable surprise or unavoidable mistake which severely impaired a party's ability to adequately present its case. In short, a rehearing is a method of rectifying a significant flaw in the conduct of the original proceeding.

*Id.* at 358.

Defendant has failed to demonstrate any grounds that would justify the granting of its motion. Moreover, the defendant's allegations of error, in addition to being insufficient as a basis for the granting of a rehearing, are without merit.

In this case, the record disclosed that Puna Sugar Company produced raw sugar. This raw sugar was "processed into refined sugar by C & H Sugar Company, a cooperative owned by the 15 Hawaiian sugar companies." Slip Op. 85–127, at 5. C & H then marketed the refined sugar for all of the sugar companies. In its original motion for review, plaintiff argued that the "increased imports of raw short and sugar contributed importantly to the workers' separation, and that it never contended * * * that imports of refined sugar impacted adversely on the Puna workers or their employer." In opposition to plaintiff's motion, and again in this motion for rehearing, defendant contends that Puna produced refined sugar. It also contends that under the adjustment assistance program "the import-impacted article must be the commodity that is *marketed,* not an article at an intermediate processing stage prior to marketing." These contentions are without merit.

The Court of International Trade reviews a determination by the Secretary of Labor that denies certification of eligibility for adjustment assistance to assure that the determination is supported by substantial evidence and is in accordance with law. 19 U.S.C. § 2395(c); *see Woodrum* v. *Donovan,* 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd,* 737 F.2d 1575 (Fed. Cir. 1984). The findings of fact by the Secretary are conclusive if supported by substantial evidence contained in the record. 19 U.S.C. § 2395(b).

In this motion, and in its memorandum in support of the Secretary's determination, counsel for the defendant contends that Puna did not produce refined sugar. Plaintiff's petition for adjustment assistance which was filed with the Department of Labor states that Puna produced raw sugar. In the negative determination on reconsideration of the workers' petition, the Secretary stated that "[r]aw sugar production coming from [Puna] is refined by the California and Hawaii Sugar Company (C & H) in San Francisco for consumption on the U.S. mainland." 48 Fed. Reg. 14,073 (1983). In addition, in the agency's notice which stated that it had instituted an investigation into the workers' petition, under the heading "articles produced," Puna is stated to produce "sugar cane—grow sugar—raw & molasses." 47 Fed. Reg. 12,402 (1982). Hence, it is clear that the Secretary found that Puna produced raw sugar and sent it to C & H for refining. The contention that Puna did not produce raw sugar was advanced for the first time by defendant's counsel in its memorandum in opposition to plaintiff's motion for review of the record.

Previous decisions of this court make clear that "the governing statutes contemplate a scheme of judicial review which is based on the record before the decision maker." *Sugar Workers Union* v. *Donovan,* 8 CIT 350, Slip Op. 84–138, at 4–5 (Dec. 28, 1984) (construing

28 U.S.C. § 2640(c) & 19 U.S.C. § 2395); *see also Abbott* v. *Donovan,* 3 CIT 54, 55 (1982). Furthermore, it is a fundamental principle of administrative law that agency action must be upheld on the basis articulated by the agency, and not by *post hoc* rationalizations of counsel. *See, e.g., Motor Vehicle Manufacturers Ass'n* v. *State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). This "simple but fundamental rule" has been stated as follows:

> [A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.

*SEC* v. *Chenery Corp.,* 332 U.S. 194, 196 (1947).

In this case, the court reviewed the Secretary's determination on the basis of the record and the Secretary's summary of decision. 19 U.S.C. § 2395(c). It cannot be doubted that the Secretary found that Puna produced raw sugar. Accordingly, in light of the facts contained in the administrative record, and the findings and reasons articulated by the Secretary, the Court must reject defendant counsel's contention that Puna produced refined sugar.

The Court also rejects defendant's contention that the Secretary may not consider articles at intermediate processing stages. Section 222 of the Trade Act requires that the Secretary determine whether "increases of imports of articles *like or directly competitive with* articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof * * *." 19 U.S.C. § 2272 (Supp. I 1983) (emphasis added).

The Act defines the words "directly competitive with" as follows:

> (5) An imported article is "directly competitive with" a domestic article at an earlier or later stage of processing, and a domestic article is "directly competitive with" an imported article at an earlier or later stage of processing, if the importation of the article has an economic effect on producers of the domestic article comparable to the effect of importation of articles in the same stage of processing as the domestic article. For purposes of this paragraph, the unprocessed article is at an earlier stage of processing.

Trade Act of 1974 § 601(5), 19 U.S.C. § 2481(5) (1982); *see also* 29 C.F.R. § 90.2 (1985).

The defendant's interpretation of the "like or directly competitive with" requirement of the Act would exclude consideration of the effect of an article at an intermediate processing stage. The Court cannot accept that interpretation because it would contradict the statutory definition of the phrase "directly competitive with," as set forth in 19 U.S.C. § 2481(5). *See United States* v. *Bedell,* 506 F.2d 174, 186 n.80 (D.C. Cir. 1974); *United Steelworkers* v. *Donovan,* 10 CIT 147, Slip Op. 86–26, at 14–16 (Mar. 12, 1986).

Defendant also contends that the increased imports or raw sugar could not have contributed to the Puna workers' separation because "most of these imports were not used for domestic consumption." The record shows that the Secretary stated that "[i]n 1981, the refined sugar equivalent of more than 25 percent of total [raw sugar] imports was exported subject to drawback procedures which allowed exporters to be refunded duties and fees paid to the government on previously imported raw sugar." 48 Fed. Reg. 14,072 (1983). The Secretary, however, did not evaluate this data, nor was its relevance explained in the notice of determination.

The only apparent reason for the inclusion of the drawback data is to explain fully the domestic export market. At no point in the record does the Secretary state or imply, as counsel contends, that this data should be evaluated under the "contributed importantly" provision of the statute. 19 U.S.C. § 2272(3).

Moreover, nothing in the record, makes clear that "increased imports did not affect the domestic price of raw sugar" because the "entire increase in exports of refined sugar absorbed almost the entire increase in imports of raw cane sugar in 1981." Indeed, the record indicates that the imports of cheap raw sugar caused the price of both raw and refined sugar to decline. The United States imported 51 percent of its sugar needs in 1981, and the import-to-production ratio for raw cane and beet sugar increased from 76 to 82.1 percent in the same year. Finally, in 1982, the President proclaimed an emergency quota program which limited the amount of raw sugar that could be imported. See Slip Op. 85–127, at 6.

The Secretary is directed by the statute to determine whether increases in imports "contributed importantly" to the workers' separation from employment. The record clearly reveals that imports of raw sugar increased significantly in the period prior to separation. The fact that some of these imports were later exported does not relieve the Secretary of the responsibility for assessing their original impact upon importation.

There is nothing in the record, and it seems contrary to logic, to suggest that, because these sugar products were exported after processing, the original influx of these products into the United States had no effect on the market. Indeed, it seems reasonable to suggest that, because of the drop in domestic sugar prices caused by the increase in imports, importers decided to take advantage of the drawback provisions and export their refined sugar rather than sell at the low domestic price.

Hence, since the Secretary chose not to evaluate the drawback data under the contributed importantly test of the Act, or explain the data's relevance to the workers' petition, the Court must reject counsel's explanation of the agency determination.

Defendant's final contention is that the certification of sugar workers at other plantations in Hawaii is irrelevant to the Puna workers' petition. In its judicial opinion in this case, the Court found

that "the Secretary did not sufficiently explain why the earlier 1977 certification of workers producing raw cane sugar in Hawaii did not 'provide a precedent.'" Slip Op. 85–127, at 13. Hence, the court ordered the Secretary to explain his reasons for decision. This order comports with the requirement of fairness that an agency explain the disparate treatment of similarly situated applicants. *See, e.g., ACTWU Local 1627* v. *Donovan,* 7 CIT 212, 587 F. Supp. 74, 78 (1984); *Contractors Transport Corp.* v. *United States,* 537 F.2d 1160 (4th Cir. 1976). Hence, if the agency "does not alter its decision, it should explicitly state its reasons for the apparently inconsistent treatment" of the workers. 537 F.2d at 1162; *see International Union* v. *Marshall,* 584 F.2d, 390, 397 (D.C. Cir 1978).

Therefore, after careful consideration of the arguments of the parties, the facts contained in the administrative record, and the statement of reasons provided by the Secretary, the Court holds that defendant has not demonstrated a "significant flaw" in the original proceeding, and its motion for rehearing is denied. The case is remanded to the Secretary for redetermination of the certification of eligibility. Of course, it is "within his discretion to make a new determination, with new findings and reasons." *International Union,* 584 F.2d at 398. It is ordered that the Secretary shall certify the record on remand, and report to the Court the results of the further proceedings within 30 days of the date of this opinion and order.