Ila HOLLOWAY, et al., Plaintiffs,

v.

Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.

Court No. 81–6–00749.

United States Court of International Trade.

April 25, 1984.

---

**1428**

Ila Holloway, pro se.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., Sheila N. Ziff, Washington, D.C., for defendant.

*On the Court's Motion for Review of Administrative Determination upon Agency Record*

RE, Chief Judge:

Plaintiffs, on behalf of the former employees of the London, Ohio, plant of Pantasote, Incorporated (London plant), challenge the Secretary of Labor's denial of certification of eligibility for worker adjustment assistance benefits under the Trade Act of 1974. 19 U.S.C. §§ 2101–2487 (1976 and Supp. V 1981). The Secretary found that the former employees of the London plant were employed by a firm that did not produce an article "like or directly competitive" with an article which was adversely affected by an increased market penetration of imports under section 222(3) of the Trade Act of 1974, 19 U.S.C. § 2272(3) (1976).

After reviewing the administrative record and the arguments of the parties, the court holds that the Secretary's denial of certification of eligibility is supported by substantial evidence, and is in accordance with the pertinent provisions of law. Therefore, the Secretary's determination is affirmed.

On July 25, 1980, plaintiff and two other workers filed a petition with the Department of Labor's Office of Trade Adjustment Assistance (OTAA) requesting certification of eligibility for trade adjustment assistance benefits for all similarly situated employees at Pantasote's London plant. Subsequently, OTAA published a notice in the Federal Register indicating receipt of the petition, and the commencement of an investigation. 45 Fed.Reg. 54487, 54488 (1980).

Section 222 of the Trade Act of 1974, 19 U.S.C. § 2272 (1976), requires that the Secretary shall certify a group of workers as eligible to apply for adjustment assistance benefits if it is determined:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles *like or directly competitive* with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production. (Emphasis added).

Plaintiffs contended before OTAA that the employees at the London plant were entitled to certification because they were separated from employment due to increased imports of "articles like or directly competitive" with the articles produced by them. In particular, plaintiff Holloway alleged that the closing of the London plant was directly attributable to the increased importing of small cars which, in turn, caused domestic car manufacturers, particularly Chrysler, to lose sales, and thus, reduce its orders of automotive parts produced at Pantasote's London plant.

During its investigation, OTAA obtained information from Pantasote's corporate headquarters about the corporation, its workforce, production, and the use of imports at the London plant. Additionally, OTAA conducted a survey of major American car manufacturers to determine aggregate domestic production and consumption, and the level of imports of the articles produced at the London plant.

OTAA's investigation established that the workers at the London plant produced, primarily, injection molded plastic parts for the domestic manufacturers of automobiles. This type of product, consisting of bumper guards, bumper fillers, automotive heater and air-conditioning ducts, and rub strips, *e.g.*, door guards, accounted for approximately 95% of the plant's total output. Within this product category, bumper fillers were the primary product, representing approximately 75% of the overall production, with the remainder evenly distributed among the other automotive injection molded products. The plant also produced miscellaneous parts for original equipment manufacturers in the appliance and home entertainment industries.

The investigation revealed no shift in production between the London plant and other domestic or foreign plants operated by Pantasote, Incorporated.

Finally, OTAA's customer survey disclosed that Ford and Chrysler were Pantasote's major customers, representing approximately 85% of the London plant's sales of automotive injection molded parts. General Motors accounted for the balance of the sales in that product category. The survey also revealed that Pantasote's major customers either did not purchase, or decreased their purchases of bumper fillers from foreign sources during the period under investigation, May 1978 through August 1980. For this period, the survey further disclosed that most of the customers purchasing rub strips, bumper guards, and automotive heater and air-conditioning ducts, either decreased their import purchases, did not purchase imports, or their reliance on imports was unchanged. Those customers who increased purchases of imports accounted for only a small percentage of the London plant's total sales.

After reviewing this data, OTAA concluded that plaintiffs' contention, that increased automobile imports contributed importantly to the downturn in sales and production at Pantasote's London plant, and the resultant layoff of its employees, was without merit. Based on these findings, the Secretary determined that increased imports did not contribute importantly to plaintiffs' separation from employment, and issued a negative determination on plaintiffs' petition. 46 Fed.Reg. 23351, 23352 (1981).

Thereafter, plaintiffs sought administrative reconsideration, asserting that the Secretary erred in his interpretation of the "contributed importantly" criterion found in section 222(3) of the Act. Specifically, plaintiffs maintained that increased automobile imports resulted in a reduced demand for the automotive parts produced at the London plant, which in turn, was an important cause in its closing.

The Secretary, in a letter dated May 5, 1981, dismissed plaintiffs' application for reconsideration, explaining that:

the Department cannot consider imports of automobiles as being like or directly competitive with component parts thereof which are produced by workers who are employees of independent parts-producing firms. Under the circumstances the Department cannot certify independent component workers based on increased imports of automobiles themselves, but only on imports of the components entering the country not already incorporated in automobiles. As for imports of the components the Department generally did not find that customers of Pantasote were switching from Pantasote's products to components produced in foreign countries.

Thereafter, by letter complaint, pursuant to section 284(a) of the Trade Act of 1974, 19 U.S.C. § 2395(a) (Supp. V 1981), plaintiffs commenced this action seeking judicial review of the Secretary's final negative determination.

The Trade Act of 1974 empowers this court to review a determination by the Secretary of Labor which denies certification of eligibility for trade adjustment assistance benefits to assure that the determination is supported by substantial evidence contained in the administrative record, and is in accordance with law. Trade Act of 1974, § 284(b), 19 U.S.C. § 2395(b) (Supp. V 1981).

Plaintiffs' principal contention is that the Secretary of Labor misconstrued section 222(3) by interpreting narrowly the phrase "like or directly competitive" to apply only to those workers manufacturing an import-impacted article, in this case, a fully assembled automobile. Essentially, plaintiffs are claiming that regardless of the nature of their work, the court should consider Pantasote's employees as part of the production process for new automobiles because their labor was essential to the final delivery of those automobiles to the retail market. Plaintiffs argue further that they are entitled to be certified as eligible for work-

er adjustment assistance benefits since their separation from employment allegedly was due to an increase in automobile imports.

■ Many cases have examined the question whether components are "like or directly competitive" with a finished end product. *See United Shoe Workers v. Bedell,* 506 F.2d 174 (D.C.Cir.1974) (shoe counters and women's shoes); *Machine Printers and Engravers Ass'n v. Marshall,* 595 F.2d 860 (D.C.Cir.1979) (engraved rollers and rotary screens and printed design fabrics); *Morristown Magnavox Former Employees v. Marshall,* 671 F.2d 194 (6th Cir.1982) (television set parts and color televisions); *Gropper v. Donovan,* 6 Ct. Int'l Trade —, 569 F.Supp. 883 (1983) (knit fabric and women's knit garments); and *ACTWU, Local 1627 v. Donovan,* 7 Ct. Int'l Trade —, (Apr. 19, 1984) (automotive batteries and cars.) The test to determine whether an article is "like or directly competitive," as contemplated under section 222(3), is clear. The imported article, allegedly injuring the domestic market, must be found to be "interchangeable with or substitutable for" the article under investigation. *Machine Printers and Engravers Ass'n, supra* at 862.

For example, in *Bedell,* the seminal case on this question, workers producing counters for women's shoes petitioned the United States Tariff Commission for benefits under the worker adjustment assistance provisions of the Trade Expansion Act of 1962, the predecessor act of the Trade Act of 1974. The Commission found that counters provided a necessary re-enforcement for heels and were purchased by shoe manufacturers from independent suppliers. The workers maintained that increased imports of wholly assembled women's shoes significantly diminished the domestic production of women's shoes, resulting in a reduced demand for shoe counters. The Tariff Commission found that the level of imported counters for women's shoes was negligible, and thus, rejected the workers' claim that imported women's footwear,

which contained counters, was "directly competitive" with counters.

The district court upheld the determination of the Tariff Commission. *United Shoe Workers v. Bedell*, Civil No. 2197–71 (D.D.C. May 9, 1972). The Court of Appeals affirmed, holding that a *component* of a completed article, which is adversely impacted by increased imports of the completed article, is not "like or directly competitive" with the imported article. *Bedell*, 506 F.2d at 177, 178.

The present case is similar in all respects to *ACTWU, Local 1627 v. Donovan*, 7 Ct. Int'l Trade ——, (Apr. 19, 1984). There, this court affirmed the Secretary's denial of certification because he determined that automotive lead acid batteries were not "like or directly competitive" with imported cars, which contained automotive batteries.

■ As in *ACTWU, Local 1627*, the articles under investigation are an integral part used in the manufacture of a car. It is apparent that the components in question, automotive injection molded parts, are not interchangeable with or substitutable for the end product, a fully assembled automobile. On that basis, plaintiffs' contention that the employees at Pantasote's London plant produced import-impacted articles is not sustainable.

It is clear that under the doctrine of *stare decisis, Bedell* and related cases are controlling. Hence, in accordance with applicable precedents, plaintiffs are not entitled to certification of eligibility for trade adjustment assistance benefits.

It is the determination of the court that the Secretary's denial of certification is supported by substantial evidence, and in accordance with law. Therefore, the Secretary's determination is affirmed, and plaintiffs' action is dismissed.