FORMER WORKERS, UNITED MINE WORKERS LOCAL 7925, PLAINTIFFS *v.* UNITED STATES, DEFENDANT

Court No. 88-02-00144

(Dated August 1, 1989)

*Creany & Creany (Timothy Creany)* for the plaintiffs.

*Stuart E. Schiffer,* Acting Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, (*Velta A. Melnbrencis*), Civil Division, U.S. Department of Justice, for defendant.

### OPINION

MUSGRAVE, *Judge:* In this action, plaintiffs, on behalf of workers and former workers of Beth-Energy Mine No. 78, challenge the decision of the Secretary of Labor denying certification to apply for worker adjustment assistance benefits under the Trade Act of 1974, 19 U.S.C. §§ 2271–2321, 2395 (1982 & Supp. III 1985). The Court has jurisdiction under 28 U.S.C. § 1581(d) (1982).

After consideration of the arguments of the parties and the administrative record, the Court holds that the determination by the Secretary of Labor is supported by substantial evidence and is in accordance with law. This case is dismissed.

### BACKGROUND

On November 5, 1987, authorized union representatives of the members of United Mine Workers of America, Local 7925 filed a petition for Trade Adjustment Assistance with the Department of Labor (Labor), pursuant to § 221 of the Trade Act of 1974, 19 U.S.C. § 2271 (1982 and Supp. III 1985), on behalf of workers and former workers of Beth-Energy Mine No. 78. Workers of the same plant had previously filed a Petition for Assistance on September 8, 1986

with respect to which a negative determination was made on December 12, 1986. Administrative reconsideration of that determination was requested; however, a negative determination was made on the application for reconsideration on February 10, 1987.

In the instant case, the petition alleges that approximately 150 workers were scheduled to be separated from employment on October 16, 1987 and that the articles produced by the firm were metallurgical and bituminous steam coal produced at Mine No. 78. Labor initiated Investigation No. TA–W–20,245 on November 16, 1987.

In its investigation, Labor considered statistical data relating to U.S. imports and production of bituminous steam coal, metallurgical coal, and coal generally. (R. 12–17.) The data relating to coal generally showed that both U.S. production and imports increased slightly in 1986 over 1985 but that imports amounted to only 0.27 percent of U.S. production. (R. 12.) The data relating to bituminous steam coal revealed that imports increased in 1986 over 1985, while U.S. production decreased, and that imports amounted to only 0.28 percent of U.S. production. During the period January through June of 1987, both U.S. production and imports decreased as compared to the corresponding period in 1986, with the amount of imports falling to 0.20 percent of U.S. production (R.13.) As regards metallurgical coal, the statistical data showed that U.S. imports were so small as to not even be reported as a percentage of U.S. production, and that U.S. production decreased in 1986 from 1985 and also during the period January through June of 1987 from the corresponding period of 1986. (R.14.)

Due to the negligible amount of U.S. imports of bituminous steam coal and metallurgical coal in 1985 and 1986, Labor did not conduct a customer survey as part of its investigation.

Labor issued a negative determination on December 18, 1987 (52 Fed. Reg. 49,098) regarding the eligibility to apply for worker adjustment assistance of workers and former workers producing metallurgical and bituminous steam coal at Beth-Energy Mine No. 78, on the grounds that increases of imports of articles like or directly competitive with articles produced by such workers' firm did not contribute importantly to their total or partial separation and to the decline in sales or production. See 19 U.S.C. § 2272(3).

Plaintiffs requested reconsideration of Labor's determination by letter dated January 11, 1988, on the grounds that Mine No. 78 had been affiliated with Bethlehem Steel Corporation since the opening of the mine, and was thus part of a corporation which plaintiffs asserted had been adversely affected by imports. This request for reconsideration was denied by Labor on January 26, 1988 (53 Fed. Reg. 3274), on the grounds that Labor had determined through its investigation that the coal produced at Mine No. 78 was sold to unaffiliated companies, and that despite its corporate affiliation with Bethlehem Steel, Mine No. 78 had not shipped any of its coal to Bethlehem Steel steel plants since 1982. (R. 26.)

## DISCUSSION

In order to certify a group of workers as eligible for trade adjustment assistance, the Secretary of Labor must determine:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272.

Based upon the findings of its investigation, Labor determined that the third criterion of the statute was not met. Given the fact that U.S. imports of coal amounted to less than one half of one percent of U.S. production, it seems clear that Labor's determination that these imports did not contribute importantly to plaintiffs' separations is supported by substantial evidence in the record.

Plaintiffs assert that the parent company of Beth-Energy Mines, Bethlehem Steel Corporation, had stopped purchasing coal from Mine No. 78 in 1983, "presumably due to the downturn in the steel production," (Pl. Brief at 4) and that for this reason Beth-Energy had to compete for sales on the open market. Plaintiffs state that "[a]lthough in general the downturn of the steel industry cannot be a predicate for a finding of eligibility by the displaced workers, it set the stage for the effects eventually felt by those workers." (*Id.*) This may well be true; however, it does not change the requirement that the imports considered must be like or directly competitive with the article produced by the petitioners. As stated in *Dan Stipe, et al.* v. *U.S. Department of Labor,* 9 CIT 543, 545, F. Supp. (1985), "[for] an end product to be like or directly competitive with a component part, the imported article 'must be found to be interchangeable with or substitutable for' the article under investigation." (quoting *Holloway* v. *Donovan,* 7 CIT 237, 585 F. Supp. 1427 (1984) (citations omitted)). In *United Mine Workers of America* v. *Brock,* 11 CIT 414, 664 F. Supp. 543, 545–46 (1987), the Court determined that coal is analogous to a component part, while steel is the equivalent of a finished product, and concluded that coal and steel are not substitutes, and do not compete with one another.

The instant case is unlike that presented in *Katunich* v. *Donovan,* 8 CIT 297, 599 F. Supp. 985 (1984), in which the Court affirmed Labor's determination after remand that employees of U.S. Steel's research laboratory were eligible for trade adjustment assistance be-

cause they performed services which were integral to the production of steel products produced by U.S. Steel. In this case, plaintiffs can not claim that their work is integral to the production of steel at Bethlehem Steel Corporation, given the fact that the coal produced by plaintiffs is not used by Bethlehem Steel, but is sold to unaffiliated companies. Defendant admits that in certain cases Labor has certified workers of a company which produces a "component" product such as coal, when that product is used in the production by an affiliated company of an "end" product such as steel, which is itself adversely affected by imports. As already indicated, however, there is no evidence in the record that the coal produced by plaintiffs was used in the production of an import—affected article by either Beth-Energy or Bethlehem Steel.

Plaintiffs' final argument is that their interpretation of the facts and the statute is arguably consistent with the statutory purpose, and that this entitles them to a reasoned explanation by Labor as to why plaintiffs' interpretation has been rejected. *See International Union, United Auto, Etc.* v. *Marshall*, 584 F.2d 390 (D.C. Cir. 1978). Upon examining the record, however, it is evident that plaintiffs did not put forward an interpretation of the facts and statute that required more of a response from Labor than that which was provided. In their petition, plaintiffs asserted that imports were the cause of their lay-offs and pointed to their corporate affiliation with Bethlehem Steel. In response, Labor noted the negligible quantity of U.S. imports of coal and explained that because Beth-Energy did not actually ship its coal to Bethlehem Steel, this affiliation was not significant.

Plaintiffs suggest that the survey conducted by Labor was lacking in thoroughness, inasmuch as a customer survey was not undertaken. However, "this Court must show substantial deference to the agency's chosen technique, only remanding a case if that technique is so marred that the Secretary's finding is arbitrary or of such a nature that it could not be based on 'substantial evidence'." *United Glass & Ceramic Workers, Etc.* v. *Marshall*, 584 F.2d 398 (D.C. Cir. 1978). Given the evidence in the record, the Court finds that Labor's determination that U.S. imports of coal did not contribute importantly to plaintiffs' separations is reasonable and in accordance with law.