**Sanders W. GROPPER, Plaintiff,**

v.

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.**

No. 81–8–01066.

United States Court of International Trade.

Aug. 16, 1983.

Sanders W. Gropper, pro se.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Sheila N. Ziff, New York City, on brief), for defendant.

*On Plaintiff's Motion for Review of Administrative Determination Upon Agency Record*

RE, Chief Judge:

Plaintiff, on behalf of the former employees of Foxco Industries Limited, New York, New York, challenges a determination of the Secretary of Labor denying certification of eligibility for benefits under the worker adjustment assistance program of the Trade Act of 1974, 19 U.S.C. §§ 2101–2487 (1976 & Supp. IV 1980). In substance, the Secretary of Labor found that the former employees of Foxco were employed by a firm that did not produce an article "like or directly competitive" with an article adversely affected by increased imports within the meaning of section 222(3) of the Trade Act of 1974, 19 U.S.C. § 2272(3) (1976).

Plaintiff asserts that an increase in the importation of knit fabric *garments* has had a negative effect upon domestic production of a *component, i.e.,* finished fabric for domestically-manufactured garments. Essentially, plaintiff complains that an end product, knit fabric garments, is "like or directly competitive" with a component, finished fabric. After reviewing the administrative record, and the arguments and briefs of the parties, the court holds that the Secretary's denial of certification is supported by substantial evidence and is in accordance with law.

On February 13, 1981, plaintiff and two other employees of Foxco filed a petition with the Office of Trade Adjustment Assistance (OTAA) for certification of eligibility to apply for trade adjustment assistance on behalf of the workers at Foxco. Pursuant to section 221(a) of the Trade Act of 1974, 19 U.S.C. § 2271(a) (1976), OTAA published a notice of the filing of the petition and the initiation of an investigation. 46 Fed.Reg. 15620 (1981).

OTAA's investigation disclosed that finished fabric is cloth which is ready to be cut into finished products such as apparel goods and home furnishings. Textile finishers buy gray fabric from weaving or knitting mills and treat the fabric to make it more attractive or serviceable. There are three types of fabric finishers, *i.e.,* textile mills, converters and commission printers. Foxco, as a converter, purchased yarn which it sent to commissioned knitters, who, after knitting the yarn into fabric, sent it to commissioned finishers under Foxco's direction. Foxco maintained an inventory of single, double, and sweater knit fabrics which were used to fill orders from its customers in the apparel industry on an as-needed basis. Foxco's production was based on orders received, and it did not import knit fabric. The firm operated as a fabric converter until it ceased operation in December 1980.

In conducting its investigation along product lines, OTAA conceded that knit fabric garments are made from finished fabric. Even so, it found that those garments are not "like or directly competitive" with finished fabric. Hence, OTAA only considered imports of finished fabric in determining the existence of import injury to Foxco's workers.

The investigation further disclosed that all types of finished fabric are "like or directly competitive" with the finished fabric produced by Foxco; that imports of all finished fabric were 32.2 percent lower in 1979 than they were in 1978, and 2.9 percent lower during the first nine months of 1980 than imports for the comparable period in 1979; and that there was a net decrease of 14.7 percent in imports between

1975 and 1979. During this same period, exports of finished fabric from the United States were increasing. Moreover, the ratio of imports to domestic production did not exceed 2.2 percent for the four-year period.

OTAA thus concluded that plaintiff's claim that increased imports of knit fabric garments contributed importantly to the downturn in Foxco's sales and production and the resultant layoff of the firm's employees was without merit.

Based on OTAA's findings, the Secretary issued a negative determination on plaintiff's petition stating that the investigation revealed that "[a]ggregate U.S. imports of finished fabric did not increase as required for certification" under section 222(3). 46 Fed.Reg. 32528, 32529 (1981).

Plaintiff requested administrative reconsideration of the Secretary's negative determination. In dismissing plaintiff's application for reconsideration, the Secretary explained that plaintiff's contention that imports of foreign-made knit fabric garments adversely impacted domestic production of finished fabric used in the manufacture of domestically-made garments is not disputed. Nevertheless, under the terms of the governing statute, certification can only be had where there is a finding of increased imports of the article "like or directly competitive" with that produced by Foxco. The Secretary reiterated that the article in question is finished fabric and not imported knit fabric garments, which are end products incorporating the component material produced by Foxco. Based on an absolute decrease in imports of finished fabric, the Secretary found no new grounds for reconsideration.

On August 12, 1981, plaintiff commenced this action by filing a letter complaint seeking judicial review of the Secretary's final determination.

Subsequently, pursuant to plaintiff's motion for a review of the administrative determination upon the agency record, the court ordered the parties to brief the relevant issues including:

(1) Whether imported knitted garments are "like or directly competitive,"

within the meaning of Section 222(3) of the Trade Act of 1974, 19 U.S.C. § 2272(3), with articles produced by plaintiff's employing firm; and

(2) Whether the Secretary of Labor's findings and resulting determination denying plaintiff's certification of eligibility for trade adjustment assistance pursuant to Section 223 of the Trade Act of 1974, 19 U.S.C. § 2273, are supported by substantial evidence as contained in the certified administrative record filed with this court.

Section 222 of the Trade Act of 1974, 19 U.S.C. § 2272 (1976), requires that the Secretary shall certify a group of workers as eligible to apply for adjustment assistance if he determines:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of *articles like or directly competitive* with articles produced by such workers' firm or an appropriate subdivision thereof were a substantial cause of such total or partial separation, or threat thereof, and to such decline in sales or production. (Emphasis added.)

The Secretary denied plaintiff's petition because it failed to satisfy the third eligibility criterion, *i.e.,* plaintiff's employer, Foxco, did not produce an article "like or directly competitive" with an article adversely affected by increased imports.

The Trade Act of 1974 empowers the court to review a decision by the Secretary denying a petition for certification of eligibility for trade adjustment assistance benefits to assure that the determination is supported by substantial evidence contained in the administrative record, and was made in accordance with law. Trade Act of 1974,

§ 284(b), 19 U.S.C. § 2395(b) (Supp. IV 1980).

Plaintiff contends that the increase in importation of knit fabric garments has contributed importantly to Foxco's decline in sales and production of finished fabric for domestically-manufactured garments and the resultant layoff of the firm's employees. Plaintiff submits that every yard of fabric produced for the apparel industry is produced for the specific purpose of manufacturing a garment. Hence, plaintiff contends that, as a practical matter, "[f]abric is made to be used in garments and you cannot separate garment manufacturers from fabric manufacturers." Plaintiff asserts that the relationship between the knit fabric and knit apparel industries is so close that the two should be considered a single entity for the purposes of determining eligibility under section 222(3).

Defendant admits that finished fabric is made to be used in knit fabric garments, among other articles. Nevertheless, defendant contends that garments which are made from finished fabric are not "like or directly competitive" with the finished fabric itself within the meaning of the governing statute. More specifically, the Secretary maintains that the phrase "like or directly competitive" in section 222(3) does not embrace finished fabric since finished fabric is only a component of the import-impacted product, knit fabric garments.

The question presented, therefore, is whether, in finding that the article produced, *i.e.,* finished *fabric,* is not "like or directly competitive" with *garments* made from finished fabric, the Secretary correctly interpreted and applied section 222(3). It is the determination of the court that a component, such as finished fabric, is not "like or directly competitive" with an end product, such as knit fabric garments, within the meaning of section 222(3).

Prior cases have examined the meaning of the phrase "like or directly competitive." *United Shoe Workers of America, AFL–CIO v. Bedell,* 506 F.2d 174 (D.C.Cir.1974); *Machine Printers and Engravers Association of United States v. Marshall,* 595 F.2d 860 (D.C.Cir.1979); *Morristown Magnavox Former Employees v. Marshall,* 671 F.2d 194 (6th Cir.1982).

While the *Bedell* case arose under the Trade Expansion Act of 1962, the predecessor act of the Trade Act of 1974, both statutes contained identical provisions that require a finding of increased imports of "like or directly competitive" articles. In *Bedell,* workers engaged in the production of counters for women's shoes petitioned the United States Tariff Commission for adjustment assistance under the provisions of the 1962 Act. The Commission found that counters provided a necessary reinforcement for heels and were generally purchased by shoe manufacturers from independent suppliers. The workers claimed that increased imports of wholly assembled women's shoes had severely reduced domestic production of shoes and, consequently, diminished the demand for shoe counters. The Tariff Commission found that imports of counters for women's shoes were negligible, and consequently, rejected the workers' contention that imported women's footwear containing counters was "directly competitive" with counters.

The district court upheld the determination of the Tariff Commission. In affirming, the Court of Appeals held that a firm producing a *component* of a finished article, which is adversely affected by increased imports of the finished article, is not a firm producing an article "like or directly competitive" with the imported article. The court relied upon its review of legislative history and preceding analogous provisions. In the course of its examination the court stated:

> When Congress enacted the Trade Agreements Extension Act of 1951, it adopted the "like or directly competitive" formula as the criterion for invoking escape-clause protection. The first congressional indication of the meaning of this phrase came during the debates on the Trade Agreements Extension Act of 1955. Senator Morse introduced an amendment to the 1951 Act that, in his view, would have given producers of

"raw materials and components" the procedural right to be heard before the Tariff Commission. On its face, the Morse amendment would have afforded component parts manufacturers the same relief as manufacturers of finished products, even if the "like or directly competitive" article entered the United States as a component of a finished product. * * * Congress rejected the Morse amendment.

506 F.2d at 180–181 (footnotes omitted).

The court further noted that, in enacting the Trade Expansion Act of 1962, Congress intended the phrase "like or directly competitive" to have the same meaning it had under the 1951 Act. In particular, the court stated:

> Although the decisions in this area have all occurred within the last three years, their roots extend deep in adjudicative history. Nearly forty years ago, the Court of Customs and Patent Appeals interpreted the phrase "like or similar" and held that an imported article was "like" a domestic article only if it had "the same or nearly the same appearance, qualities or characteristics." The Tariff Commission took the same position shortly after "like or similar" was legislatively changed to "like or directly competitive" in 1951. In a 1952 case, the Commission concluded that an imported glace cherry was not "like or directly competitive" with a domestic sweet cherry. It held that "[t]he domestic industry producing glace cherries [could] not properly be considered as including the cherry growers," the producers of domestic sweet cherries.

506 F.2d at 184–185 (footnotes omitted). From the foregoing legislative history and preceding analogous provisions, it is clear that Congress did not intend to expand the scope of coverage in the manner suggested by plaintiff.

Judicial construction of the phrase "like or directly competitive" was reaffirmed in the *Machine Printers and Engravers* case. In that case, the union, on behalf of certain of its members employed by independently-owned firms engaged in the business of engraving copper or plastic rollers and rotary screens for use by domestic textile manufacturers to print designs on fabrics, challenged the Secretary's denial of certification of eligibility for benefits under the worker adjustment assistance program of the Trade Act of 1974.

The union did not claim that the workers' jobs, or their employers' sales were adversely affected by increased imports of engraved rollers or screens, or that any increase in imports of those articles had occurred. Rather, the union claimed that its members were losing work because increased imports of textiles had reduced the demand for engraved rollers and rotary screens.

The court held that despite the adverse impact of textile fabric imports upon the workers' employers, the fabric imports plainly were not "like or directly competitive" with engraved rollers or rotary screens. More specifically, the court found the rollers and screens not to be "interchangeable with nor substitutable for the domestic textile fabrics" whose market suffered from imports. 595 F.2d at 862. It thus concluded, on the basis of *Bedell*, that the trade adjustment assistance provisions, as written, did "not authorize the Secretary to extend relief to workers employed by roller and screen engravers whose business has been adversely affected by increased imports of textile fabrics." *Ibid.*

It is clear that the rationale of the *Bedell* and *Machine Printers and Engravers* cases is applicable to the present case. Like the heel counters in *Bedell,* and the engraved rollers and rotary screens in *Machine Printers and Engravers,* the finished fabric in the present case is a *component* of a finished article, knit fabric garments, that has been adversely impacted by increased imports. Hence, the finished fabric is not embraced by the phrase "like or directly competitive" in section 222(3), since it is neither interchangeable with, nor substitutable for the import-impacted knit fabric garments.

In the *Morristown Magnavox* case, the court, also relying upon *Bedell,* held that workers producing components of television

sets at a domestic plant, which was adversely affected by importations of completed color television sets from Japan, were ineligible for trade adjustment benefits under section 222. It stated:

> * * * component parts of a television set are not "like" a completed television set within the meaning of the statute at issue and * * * imports of fully completed television sets are not directly competitive with the manufacture of printed circuit boards, flybacks and deflection yokes.

671 F.2d at 198.

The court, in affirming the Secretary's determination, made the following pertinent observation:

> In holding that "like" must be construed as we do today, we are mindful of the remedial purpose of the adjustment assistance provisions. Those provisions are designed to extend relief to manufacturers and workers who, in consequence of governmental action, find themselves idle or jobless. Such remedial legislation should be construed broadly to effectuate its purpose. But we cannot attach to a statute any objective that would negate the limits clearly intended by the legislature. Congress has made a policy decision and drawn a line; our duty is to give the language of the statute a meaning that will carry out that policy. The result may appear harsh in this day of high unemployment and rising cost of living, but the remedy for congressional policies that do not extend beyond lawful bonds is in the legislature.
>
> While it seems clear to us that the petitioners here may have suffered loss of jobs from the general impact on the television market of foreign competition, it does not appear that Congress has ever provided adjustment to them or people in their general classification. The restriction in the bill of such adjustment to job loss resulting from competition of "like or

directly competitive" products has been repeatedly criticized and debated in Congress. But to date all proposals to eliminate or mitigate these two restrictions have been defeated.

671 F.2d at 197.

In light of the pertinent statutory language, legislative history, and judicial precedents, the court holds that:

(1) the Secretary's finding that there was a decline in imports of finished fabric, and that imports of foreign-made knit fabric garments have had a negative effect on domestic production of finished fabric, during the concerned period, is supported by substantial evidence in the record;

(2) the imported knit fabric garments are not "like or directly competitive," within the meaning of section 222(3) of the Trade Act of 1974, 19 U.S.C. § 2272(3), with articles produced by plaintiff's employing firm; and

(3) that the Secretary of Labor's findings and resulting determination denying plaintiff's certification of eligibility for trade adjustment assistance pursuant to section 223 of the Trade Act of 1974, 19 U.S.C. § 2273, are supported by substantial evidence as contained in the certified administrative record filed with the court.

Accordingly, it is the determination of the court that the Secretary of Labor's denial of certification is supported by substantial evidence and is in accordance with the trade adjustment assistance provisions of the Trade Act of 1974. The determination of the Secretary is therefore affirmed.