**Slip Op. 04-142**

**United States Court of International Trade**

```
┌─────────────────────────────────┐
│                                 │
│ FORMER EMPLOYEES OF MURRAY      │
│ ENGINEERING, INC.               │
│                                 │
│              Plaintiff,         │
│                                 │
│         v.                      │
│                                 │
│ ELAINE L. CHAO, UNITED STATES   │
│ SECRETARY OF LABOR,             │
│                                 │
│              Defendant.         │
│                                 │
└─────────────────────────────────┘
```

Before: Pogue, Judge

Court No. 03-00219

[Remanded to the Secretary of Labor for further investigation.]

Decided: November 15, 2004

Ken Walter, Pro Se, for Plaintiff.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Stephen C. Tosini, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Jayant Reddy, Attorney, Of Counsel, Office of the Solicitor, U.S. Department of Labor, for Defendant.

**OPINION**

**Pogue, Judge:** In this action, Plaintiff challenges the second remand determination of the Department of Labor ("Labor") regarding his claim for trade adjustment assistance under the Trade Act of 1974 ("the Act").[1]  Labor's second remand determination follows the

---

[1]Labor first voluntarily remanded this case for further investigation as to whether Plaintiff's company produced an "article" within the meaning of the Act.  See Former Employees of

Court's opinion in <u>Former Employees of Murray Eng'g, Inc. v. Chao</u>, slip op. 04-45 (CIT May 4, 2004) ("<u>Murray I</u>").[2] In its second remand determination, Labor found that Plaintiff could not be certified as eligible for trade adjustment assistance because Plaintiff's former company, Murray Engineering, Inc., ("Murray") did not produce an article within the meaning of the Act.  <u>Murray Engineering, Inc., Complete Design Service, Flint, Michigan</u>, 69 Fed. Reg. 52,935, 52,936 (Dep't Labor Aug. 30, 2004) (notice of negative determination on remand ) ("<u>Second Remand Determ.</u>"). Labor also found that to the extent that Plaintiff's company did produce an article, Plaintiff's company did not lose business due to increased imports of like or directly competitive articles.[3]  <u>Id.</u>

_____

<u>Murray Eng'g v. United States</u>, slip op. 03-71, at 1 (CIT June 27, 2003).  Labor's first, voluntary remand determination was then remanded by the Court, making the determination challenged in this action Labor's second remand determination.

[2]Familiarity with this opinion is presumed.

[3]Section 222 of the Trade Act of 1974, as amended, is codified at 19 U.S.C.A. § 2272 (West Supp. 2004).  It reads, in pertinent part:

(a) <u>In general</u>

   A group of workers . . . shall be certified by the Secretary as eligible to apply for adjustment assistance under this part . . . if the Secretary determines that--

   <u>(1)</u> a significant number or proportion of the workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated . . .; and . . .

   <u>(2)(A)(ii)</u> imports of articles like or directly competitive with articles produced by such firm or subdivision have

at 52,937.  Labor also found that Plaintiff was not eligible for certification as a secondarily-affected worker for two reasons.[4] First, Plaintiff's former employer did not produce a component part for a certified company and, second, the certified company for which Plaintiff claimed his company provided component parts last did business with Plaintiff's company several years before Plaintiff's claim, and thus, loss of work from that company was not a contributing factor to Plaintiff's layoff.  Id. at 52,937.

Because the record discloses that Plaintiff's company produced an article within the meaning of the Act, and because the record fails to show the legal basis for Labor's finding that there were no imports of directly competitive articles, the Court remands this case to Labor for further investigation.  The Court defers consideration of the claim for certification as a secondarily-affected worker until such time as Labor has explained the basis of its determination that Plaintiff's former employer was not affected

---

increased.

19 U.S.C.A § 2272(a) (West Supp. 2004).

[4]Congress re-authorized trade adjustment assistance, as provided by the Act, in 2002.  Trade Adjustment Assistance Reform Act of 2002, Pub. L. No. 107-210, §111, 2002 U.S.C.C.A.N. (116 Stat.) 935, 936.  Congress also amended the Act to cover "adversely affected secondary workers."  Id. at § 113.  This new coverage is codified at 19 U.S.C.A. § 2272(b).  19 U.S.C.A. § 2272(b) (West Supp. 2004).  This provision grants eligibility for trade adjustment assistance to workers if their firm either was a supplier of "component parts" to a producer certified for adjustment assistance or if loss of business with a certified producer contributed importantly to the workers' separation.  Id.

by imports of "directly competitive" articles.

## STANDARD OF REVIEW

The Act provides for judicial review of Labor's eligibility determinations.  See 19 U.S.C. § 2395(a) (West Supp. 2004).[5] Subsection (b) of this provision requires that, in reviewing a denial of certification of eligibility, "[t]he findings of fact by the Secretary of Labor . . ., if supported by substantial evidence, shall be conclusive."  19 U.S.C. § 2395(b) (West Supp. 2004).  As discussed in Murray I, the statute  does not mention how this Court is to treat Labor's legal determinations.  See Murray I, slip op. 04-45, at 6.  Where a statute authorizing judicial review does not state the precise level of review, the Courts have recourse to the standards outlined under the Administrative Procedure Act ("APA").

---

[5]19 U.S.C. § 2395(a) reads, in part:

(a) Petition for review; time and place of filing

A worker, group or workers, . . . or group aggrieved by a final determination of the Secretary of Labor under section 2273 of this title . . . may, within sixty days after notice of such determination, commence a civil action in the United States Court of International Trade for review of such determination.

19 U.S.C. § 2395(a) (West Supp. 2004).

See 5 U.S.C. § 701(a)(2000).[6]    The APA provides that agency determinations shall be held invalid where they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.  Under this standard, it is clear that an agency's determination cannot be upheld where it fails to acknowledge applicable law or to demonstrate how it reaches its conclusions of law.  See Arizona Grocery v. Atchison Ry., 284 U.S. 389 (1931) (holding that an agency may not refuse to recognize its own rules or regulations with retroactive effect), Burlington Truck Lines Co. v. United States, 371 U.S. 156, 168 (1962) (holding that an agency determination must show "a rational connection between the facts found and the choice made.")

## DISCUSSION

In its remand order, the Court directed Labor to develop the

---

[6]5 U.S.C. § 701(a) states:

  (a) This chapter applies, according to the provisions thereof, except to the extent that—
    (1) statutes preclude judicial review; or
    (2) agency action is committed to agency discretion by law.

5 U.S.C. § 701(a) (2000).  No statute precludes judicial review of Labor's eligibility determinations under the Act; in fact, 19 U.S.C. § 2395(b) authorizes such review.  Moreover, while Congress has delegated to Labor the duty of investigating eligibility claims and granting and denying them, nothing in the Act indicates that Congress meant this delegation to be so broad as to allow Labor to make determinations that would be otherwise arbitrary and capricious, i.e., not explained on the record, or otherwise not in accordance with law.

factual record to reflect the percentage of Murray's designs embodied in forms comprising "articles." Murray I, slip op. 04-45, at 22. Labor found that 100% of Murray's designs were embodied on CD-Rom and that for two-thirds of the designs, Murray also provided printed copies.[7] Second Remand Determ. at 52,395. These facts

_____

[7]Despite the Court's holding in Murray I that Plaintiff's designs are articles provided for in the HTSUS, at least to the extent that they were either printed out or embodied on such media as CD-ROMs and floppy disks, Labor devoted the majority of its administrative record on this remand to arguments that the HTSUS does not furnish a proper guide for the inquiry into what constitutes an "article" under the Act and that even to the extent the HTSUS applies, Murray's blueprints are not provided for in the HTSUS. See Second Remand Determ. at 52,936-37. Such arguments do not persuade the Court here.

First, the language of the Act clearly indicates that the HTSUS governs the definition of articles, as it repeatedly refers to "articles" as items subject to a duty. See, e.g., 19 U.S.C. §§ 2119, 2252(d)(4)(B)-(C)(2000) (discussing "rate of duty on any article", "amount of duty with respect to any article," suspension of liquidation "with respect to an imported article," and imposition of duty "with respect to an imported article"). While the references to "articles" in § 2272 do not include such express references to duties, where a statute uses a term repeatedly, it is considered to maintain a uniform meaning throughout. See RHP Bearings Ltd. v. United States, 288 F.3d 1334, 1346-47 (Fed. Cir. 2002); SKF USA Inc. v. United States, 263 F.3d 1369, 1382-83 (Fed. Cir. 2001). Moreover, Labor provides the Court with no reason that "articles" of § 2272 should not refer to dutiable items when the term "articles" is used throughout the Act to refer to such items or is otherwise used in a manner which does not betray any other intended meaning. Indeed, as § 2272 refers to imports of "articles," it would be strange indeed were articles for purposes of § 2272 not also objects provided for in the HTSUS. As printed designs and designs on CD-ROM and diskette are provided for in heading 4911, HTSUS (2003), and subheading 8524.39.40, HTSUS (2003), such items are "articles" within the meaning of the Act.

Second, while Labor found that some of Murray's customers pay by the hour for the production of designs made to their specifications, see Second Remand Determ. at 52,935, this fact does not change the text or meaning of the HTSUS, which clearly

provides for printed or recorded blueprints as articles.  Also, while Labor may claim that application of the HTSUS's provisions for recorded electronic media, such as CD-ROMs, leads to an absurd result, in that the provisions do not place a particular value on the information recorded therein, regardless of the fact that the value of the recorded information may be far greater than the value of the media, see Second Remand Determ. at 52,936, that result obtains from a plain reading of the text, and is not one that appears to have troubled Congress.  Moreover, the Court notes that the HTSUS differentiates between CD-ROMs that are blank and those upon which data has been saved.  See headings 8523 and 8524, HTSUS.  Therefore, in saving information to a blank disk, Murray works a "tariff shift," producing an entirely new article.  Similarly, blank paper and paper upon which blueprints are printed are distinct articles under the HTSUS, i.e., printing a blank paper with blueprints results in the creation of a new and distinct article under the Act.

The Court notes that in its first remand determination Labor itself recognized the Act's repeated references to articles as objects subject to a duty and consequently relied on the HTSUS to determine whether or not a given good is an article.  Murray I, slip op. 04-45, at 10.  Indeed, given the text of the Act, Labor had good reason to rely on the HTSUS.  It is simply disingenuous for the agency, upon learning that the HTSUS does not provide the result the agency appears to have already chosen, to now argue that it is inappropriate to refer to the HTSUS in order to determine whether the product Plaintiff's former employer makes constitutes an article for the purposes of the Act.

Nevertheless, the Court recognizes that the ability of the HTSUS to control the outcome of adjustment assistance cases is not unlimited.  For example, there are a number of goods that are exempted from duty under the HTSUS.  But even where the application of the HTSUS might result in a good that would normally be considered simply incidental to a service (such as a fast food hamburger) being labeled an article under the Act, this is not reason to believe that all and any workers will be able to successfully file for TAA, contrary to Congress' intentions.  The Act requires that increased imports of like or directly competitive articles have contributed importantly to the former employees' separation.  It is highly probable that in many cases, even where the former employees can show that they were in some way engaged in producing an article, that article will not be the subject of increasing foreign importation that results in domestic job losses.  At any rate, on the facts presented here, it remains that blueprints, whether printed or on CD-ROM, appear to be provided for as "articles" under the HTSUS, and therefore,

demonstrated that Murray produced articles within the meaning of the Act.[8]  Labor then went on to investigate the question of whether Plaintiff's job loss was related to increased competition from imports of like or directly competitive articles.  Id. at 52,937.  Labor concluded that increased imports of like or directly competitive articles did not contribute to the layoffs at Plaintiff's company.  Id.

Labor's investigation into imports of like or directly competitive articles, however, consisted only of contacting Murray's major declining customers to ask them if their orders with Murray had ceased or been scaled down due to their increased imports of designs from abroad.  Id.  All replied in the negative.

_____

the Act.

[8]Labor's error appears to stem from its failure to distinguish between factual and legal determinations.  Labor provides several legal sources categorizing various industries as either "service" industries or "manufacturing" industries.  See United Nations Statistics Division, Classifications Registry, C.R. Doc. No. 20, World Trade Organization, Services Sectoral Classification List, C.R. Doc. No. 21, U.S. Dep't of Labor, Bureau of Labor Statistics, Occupational Outlook Handbook (2004), C. R. Doc. No. 25.  These sources, however, are not relevant to understanding the way the term "article" is defined under the Act.  While other legal sources may differentiate between objects produced by service industries versus objects produced by manufacturing industries, the Act requires only that the object made be within the embrace of the HTSUS.  Therefore, categorizations of industries provided by the United Nations, the World Trade Organization, or even Labor's own Bureau of Labor Statistics are not relevant to understanding the use of the word "article" under the Act.  This is precisely because they do not speak to the definition of the word "article" as used in the Act, but rather to the categorization of industries for entirely other purposes.

Id. Labor therefore concluded that increased competition from imports of either like or directly competitive articles had not contributed to the layoffs at Murray.  Id.

Labor's determination suffers from two deficiencies.  First, it betrays a lack of understanding of the industry it is investigating and the requirements of the Act.  Second, Labor failed to make reference to relevant law regarding directly competitive articles, including Labor's own regulations on the matter, or to explain how, given such relevant law, the facts found support Labor's conclusion that there were no imports of directly competitive articles.

First, Murray is in the business of providing custom designs for the construction of "machines, tools, gauges, dies, molds and fixtures for hydraulic, pneumatic, mechanical, and electrical systems used in the manufacture of products" to its customers. Second Remand Determ. at 52,935; see also Murray I, slip op. 04-45, at 3. While Labor asked Murray's major declining customers whether they had ceased to buy designs from Murray because they were importing foreign designs, it failed entirely to address itself to the more likely scenario that Murray's customers no longer had as much business for Murray because they themselves had either failed to win bids to provide machinery to other companies, or because increased foreign competition meant that they could no longer

afford to create new machinery for themselves.[9]  See Memorandum

from Del-Min Amy Chen to The File, Re: MURRAY ENGINEERING, INC.,

Flint, Michigan, C.R. Doc. No. 27 at 148 (July 6, 2004); Facsimile

from Gene Sperry, Lansing Tool & Eng'g Inc., to Del-Min Amy Chen,

Re: Survey, C.R. Doc. No. 28 at 149-50 (July 7, 2004); Facsmile

from Matt Sawyer, Reinhart Indus., Inc., to Del-Min Amy Chen, C.R.

Doc. No. 29 at 151-53 (July 7, 2004); Facsimile from Bill Meek,

Delphi-East, to Del-Min Amy Chen, C.R. Doc. No. 30 at 154-155 (July

16, 2004); Facsimile from Christopher Mill to Del-Min A. Chen, CR.

Doc No. 31 at 156-57 (July 21, 2004); Memorandum from Del-Min Amy

Chen to The File, Re: MURRAY ENGINEERING, INC., COMPLETE DESIGN

SERVICES, FLINT MICHIGAN, C.R. Doc. No. 32 at 158 (July 23, 2004);

Facsimile from Dale A. Erdman to Del-Min Amy Chen, C.R. Doc. No. 33

at 159 (Rec'd Aug. 2, 2004).   Moreover, Labor failed to ask

Murray's former customers whether their business with Murray had

declined because either they or their customers had moved

manufacturing operations abroad, thus making it more prudent to

have their manufacturing machines designed and built abroad.  Id.

In such a case, the correct inquiry would not be to investigate

---

[9]The record does not reveal the extent to which Murray's
major declining customers needed Murray's designs to create
machinery for their own use, or to fulfill contracts to provide
machinery to others, although communications with Murray's
customers reveal that certain customers were manufacturing
objects in fulfilment of a contract to provide such goods to
others.  See, e.g., Facsimile from Bill Meek, Delphi-East, to
Del-Min Amy Chen, C.R. Doc. No. 30 at 154-155 (July 16, 2004).

imports of designs, or even to investigate imports of manufacturing machinery, but to investigate imports of items of manufacture which formerly would have been built in the United States on machines produced by Murray's customers.

Such manufactured products would be, of course, different articles than designs for manufacturing machines. But the language of the Act clearly contemplates that harmful effects may result from imports of products which are not "like" those produced by domestic companies, but which are instead "directly competitive." Labor's investigation did not even inquire into imports of "directly competitive" articles.

Second, Labor has defined the term "directly competitive" by regulation. Under 29 C.F.R. § 90.2 (2004), a directly competitive product may be either a product that is commercially substitutable for a domestic product, or represent the domestic product in an earlier or later stage of processing:

> Like or directly competitive means that like articles are those which are substantially identical in inherent or intrinsic characteristics (i.e., materials from which the articles are made, appearance, quality, texture, etc.); and directly competitive articles are those which, although not substantially identical in their inherent or intrinsic characteristics, are substantially equivalent for commercial purposes (i.e., adapted to the same uses and essentially interchangeable therefor).

> An imported article is directly competitive with a domestic article at an earlier or later stage of processing, and a domestic article is directly competitive with an imported article at an earlier or later stage of processing, if the importation of the

> article has an economic effect on producers of the domestic article comparable to the effect of importation of articles in the same stage of processing as the domestic article.

29 C.F.R. § 90.2 (emphasis in original).

This regulation requires Labor to investigate two questions. First, while designs and manufactured products are obviously not "substantially equivalent for commercial purposes," do designs for heavy machinery represent an "earlier stage of processing" of the products manufactured on such machines? Second, if designs are an "earlier stage of processing" of manufactured products, does the importation of such manufactured goods have an economic effect comparable to importation of articles in the same stage of processing as the domestic article, i.e., the designs?

The Second Remand Determ. does not address these questions. Indeed, Labor did not even cite to 29 C.F.R. § 90.2 in its determination that there were no imports of directly competitive articles, although the regulation is directly on point. It is not the Court's province, in the first instance, to determine the meaning of Labor's regulation and then attempt to apply it to the facts of this case. It is, however, Labor's duty. Therefore, because the Second Remand Determ. does not explain the legal basis for the finding that there were no imports of directly competitive articles, the Court remands to Labor for explanation of how its finding that Murray's customers' non-importation of designs

suffices to show that there were no imports of directly competitive articles under 29 C.F.R. § 90.2.  In addition, in light of Labor's second remand determination on this issue, Labor is also directed to re-open its investigation to determine whether imports of like or directly competitive articles from abroad contributed to the cessation or decline of orders from Murray's major customers.[10]

## CONCLUSION

Labor shall have until January 14, 2005 to submit its remand determination.  The parties shall have until January 28, 2005 to submit comments on the remand determination.  Rebuttal comments shall be submitted on or before February 4, 2005.

  /s/Donald C. Pogue  
Donald C. Pogue
Judge

Dated:     November 15, 2004
           New York, New York

---

[10]The Court notes that Labor received three extensions of time in which to file its Second Remand Determ.  See Order (July 8, 2004), Order (Aug. 10, 2004), Order (Aug. 17, 2004). Nonetheless, Labor's investigation appears to have dealt not with the amplified fact-finding with which the Court charged the agency, but with revisiting issues the Court already resolved in Murray I.  Meanwhile, Plaintiff has not yet had the benefit of a final, supportable determination as to his claim.  Labor should consider itself apprised that the Court will not reward dilatory behavior.