Slip Op. 05-78

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - -x

FORMER EMPLOYEES OF MURRAY      :
ENGINEERING, INC.,
                                :   Before: Pogue, Judge
          Plaintiffs,
                                :   Court No. 03-00219
          v.
                                :
ELAINE L. CHAO, UNITED STATES
SECRETARY OF LABOR,             :

          Defendant.            :

- - - - - - - - - - - - - - - -x

OPINION

[Department of Labor's determination on remand sustained.]

Dated: June 28, 2005


*Ken Walter*, Pro Se, for the plaintiffs.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Stephen C. Tosini*); *Jayant Reddy*, Attorney, Of Counsel, Office of the Solicitor, U.S. Department of Labor, for the defendant.


Pogue, Judge: In this action, the plaintiffs challenge the third remand determination of the Department of Labor ("Labor") regarding their claim for trade adjustment assistance ("TAA") benefits under the Trade Act of 1974, 19 U.S.C. § 2271 - 2395 (2000) ("the Act"). The plaintiffs ask the court to decide whether the former employees of Murray Engineering, Inc., Complete Design

Service ("Murray") are eligible for TAA benefits pursuant to 19 U.S.C. § 2272 (West Supp. 2005) where (a) Murray's workers produced designs for dies, and (b) even though there have been no increased imports of designs themselves, Murray's customers may have imported articles that are in the design's chain of production, such as dies made from Murray's designs, parts or machinery made from such dies, and machinery produced from such dies or parts, which may have ended up in constructed automobiles. The court affirms Labor's negative determination on remand that, to the extent that there were imports of articles in the designs' chain of production, such articles were not "directly competitive" with the designs themselves.

## BACKGROUND

Kenneth Walter was an employee of Murray, a Michigan corporation that creates designs to make machines, tools, gauges, dies, molds, and fixtures for hydraulic, pneumatic, mechanical, and electrical systems ("dies") used in the manufacture of certain automotive products. *Murray Engineering, Inc. Complete Design Service, Flint, Michigan*, 69 Fed. Reg. 52,935, 52,935 (Dep't Labor Aug. 30, 2004) (notice of negative determination on remand) ("*Second Remand Determ.*"). On January 15, 2003, Walter filed a

petition for TAA benefits on behalf of Murray's former employees.[1]

*Second Remand Determ.* 69 Fed. Reg. at 52,935.  Since then, Labor

has made four determinations.[2]   In its determination after the

third remand, Labor concluded that the workers are not eligible for

---

[1]Workers are eligible for TAA benefits:

> [I]f the Secretary determines that . . . imports of
> articles like or directly competitive with articles
> produced by [the workers' firm] . . . have increased;
> and . . . the increase in imports . . . contributed
> importantly to such workers' separation . . . and to
> the decline in the sales or production of such firm . .
> . . [or] the workers' firm . . . is a supplier or
> downstream producer to a firm . . . that employed a
> group of workers who received [TAA certification].

19 U.S.C. § 2272(a), (b).

[2]Labor first voluntarily remanded this case for further
investigation as to whether the plaintiffs' company produced an
"article" within the meaning of the Act.  See Former Employees of
Murray Eng'g v. United States, 27 CIT __, Slip Op. 03-71, at 1
(June 27, 2003).  Labor's first, voluntary remand determination
was then remanded by the court to investigate "the nature of the
designs produced by Murray, . . . the manner or form in which
these designs are sold as 'articles,' and how the plaintiffs'
claim is affected by Murray's production of designs embodied in
various formats[.]"  Former Employees of Murray Eng'g, Inc. v.
Chao, 28 CIT __, __, 346 F. Supp. 2d 1279, 1290 (2004).  Labor's
second remand determination was then remanded by the court once
again to investigate two questions.  "First, while designs and
manufactured products are obviously not 'substantially equivalent
for commercial purposes,' do designs for heavy machinery
represent an 'earlier stage of processing' of the products
manufactured on such machines?"  Former Employees of Murray
Eng'g, Inc. v. Chao, 28 CIT __, __, 358 F. Supp. 2d 1269, 1275
(2004).  "Second, if designs are an 'earlier stage of processing'
of manufactured products, does the importation of such
manufactured goods have an economic effect comparable to
importation of articles in the same stage of processing as the
domestic article, i.e., the designs?"  Id.  Presently before the
court is Labor's fourth determination; i.e., its third remand
determination.

TAA benefits, because, contrary to the requirements of § 2272(a), Murray had not moved any design work abroad and imports of articles like or directly competitive with those produced by the workers had not increased.  Labor also concluded that the workers do not qualify as adversely affected secondary workers as required under § 2272(b).  *Murray Engineering, Inc. Complete Design Service, Flint, MI*, 70 Fed. Reg. 12,902, 12,902 (Dep't Labor Mar. 16, 2005) (notice of negative determination on remand) ("*Third Remand Determ.*").

**STANDARD OF REVIEW**

Title 19 U.S.C. § 2395(b), (c) empowers this Court to review determinations by the Secretary of Labor finding workers ineligible for TAA benefits in order to ensure that the determinations are supported by substantial evidence and are made in accordance with law.  19 U.S.C. § 2395(b), (c); see also Int'l Union v. Marshall, 584 F.2d 390, 396 n.26 (D.C. Cir. 1978) ("[T]he rulings made on the basis of those findings [must] be in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis.").

**DISCUSSION**

The court finds that Labor properly determined (1) that the workers do not satisfy § 2272(a)'s requirements that the employer

either suffer declining business due to increased imports of articles like or directly competitive with its own products and (2) that the workers do not qualify as adversely affected secondary workers as required by § 2272(b).

1.   Labor Properly Determined That The Workers Do Not Satisfy § 2272(a)'s Requirements That The Employer Suffer Declining Business Due to Increased Imports Of Articles Like Or Directly Competitive With Domestic Articles

Labor's third remand determination focused on evidence of increased imports of like or directly competitive articles. In making its determination, Labor referred to its own regulation, 29 C.F.R. § 90.2, for the definition of the term, "like or directly competitive." *Third Remand Determ.*, 70 Fed. Reg. at 12,903.[3] In pertinent part, the regulation reads:

> Like or directly competitive means that like articles are those which are substantially identical in inherent or intrinsic characteristics (i.e., materials from which the articles are made, appearance, quality, texture, etc.); and directly competitive articles are those which, although not substantially identical in their inherent or intrinsic characteristics, are substantially equivalent for commercial purposes (i.e., adapted to the same uses and essentially interchangeable therefor).
>
> An imported article is directly competitive with a domestic article at an earlier or later stage of processing, and a domestic article is directly competitive with an imported article at an earlier or

_____

[3]Former employees may also qualify for assistance under § 2272(a) if their firm has moved its own production abroad. Labor determined after the second remand that Murray did not move any design work abroad during the relevant time period. *Second Remand Determ.*, 69 Fed. Reg. at 52,937. Because the plaintiffs have not disagreed with this finding, the point is not at issue in this case.

later stage of processing, if the importation of the
article has an economic effect on producers of the
domestic article comparable to the effect of importation
of articles in the same stage of processing as the
domestic article.

29 C.F.R. § 90.2 (2003) (emphasis in original).[4]

    As such, Labor explained that the articles that are in the

chain of production are not "directly competitive" with the

_____

    [4]The definition of "directly competitive" contained in this
regulation corresponds exactly with the Trade Act of 1974's
definition of "directly competitive" as codified by 19 U.S.C. §
2481(5) (2000).  Although Labor neither explained the extent of
imports of articles that are in the chain of production nor
discussed why these possibly imported articles are not "like"
their domestic counterparts, it appears fairly clear from 29
C.F.R. § 90.2 that the workers' designs are not "substantially
identical in inherent or intrinsic characteristics" when compared
with those possibly imported articles.
    Cases applying this regulation reveal that courts view this
statute as containing two requirements for imported articles to
be considered "directly competitive" with domestic articles.
See, e.g., Western Conference of Teamsters v. Brock, 13 CIT 169,
178, 709 F. Supp. 1159, 1167 (1989) ("The statutory test is
economic: Articles in different stages of processing are directly
competitive if the economic effect of importation is the same as
if the articles were in the same stage of processing.").  First,
the imported article must be "at an earlier or later stage of
processing" from the domestic article.  19 U.S.C. § 2481(5); 29
C.F.R. § 90.2. Second, the importation of the article must have
"an economic effect on producers of the domestic article
comparable to the effect of importation of articles in the same
stage of processing as the domestic article."  Id.  Because both
requirements must be met, courts typically do not address the
second requirement of comparable economic effect if the plaintiff
has not met the first requirement of earlier or later stage of
processing.  See, e.g., Brock, 13 CIT at 179, 709 F. Supp. at
1167 (finding that Labor "should have determined if the economic
effect of importation of raw sugar (imported article) is
comparable to the effect of the importation of refined sugar
(domestic article)" because the raw sugar was determined to be
refined sugar at "an earlier stage of processing") (emphasis in
original).

workers' designs for dies, because those designs do not represent an "earlier stage of processing" of such dies or the products manufactured on such dies. *Third Remand Determ.* at 12,903.[5] Labor found that an article at an "earlier stage of processing" than a finished article may only be "directly competitive" with that finished article if it remains "substantially the same" during such stages of processing and is "not wholly transformed into a different article." Id. at 12,903 (referring to the legislative history of the Trade Expansion Act of 1962,[6] H.R. Rep. No. 87-1818

---

[5]In the third remand, the court also asked Labor to determine whether the importation of dies has an economic effect comparable to the importation of articles in the same stage of processing as the designs of the dies, if Labor found that designs are an "earlier stage of processing" of manufactured dies, parts, or automobiles. Former Employees of Murray Eng'g, Inc. v. Chao, 28 CIT at __, 358 F. Supp. 2d at 1275. Labor's determination that the workers' designs are not an "earlier stage of processing" of articles in the design's chain of production renders this second question moot.

[6]"The legislative history of the Trade Act of 1974 indicates that the term 'like or directly competitive' was used in the same context as in the Trade Expansion Act of 1962." United Steelworkers v. Donovan, 10 CIT 147, 152, 632 F. Supp. 17, 22 (1986) (citing S. Rep. No. 93-1298 (1974), reprinted in 1974 U.S.C.C.A.N. 7186, 7265). A conflict exists between the legislative history's examples of articles, which are "substantially the same," and the Harmonized Tariff Schedule of the United States' ("the HTSUS") use of the term, "article."

> The term "earlier or later stage of processing" contemplates that the article remains substantially the same during such stages of processing, and is not wholly transformed into a different article. Thus, for example, zinc oxide would be zinc ore in a later stage of processing, since it can be processed directly from zinc ore. For the same reason, a raw cherry would be a glace cherry in an earlier stage of processing, and the

at 24 (1962) ("The term 'earlier . . . stage of processing' contemplates that the article remains substantially the same during such stages of processing, and is not wholly transformed into a different article.")).  Noting that the legislative history's language parallels the definition of "directly competitive" in 29 C.F.R. § 90.2, Labor argued that past TAA cases[7] support the

_____

same is true of a live lamb and dressed lamb meat.

United Steelworkers, 10 CIT at 153, 632 F. Supp. at 22 (quoting H.R. Rep. No. 87-1818 at 24 (1962)).

On the other hand, the Harmonized Tariff Schedule of the United States ("HTSUS") classifies raw cherries and live lamb as different articles from glace cherries and dressed lamb meat. Cf. Subheadings 0809.20.00 & 0104.10.00, HTSUS with Subheading 2008.60.00 and with Subheading 0204.10.00.  The application of this legislative history also poses interpretative problems.  For example, the Court of International Trade in Gropper v. Donovan found that domestic fabric for knit fabric garments is not directly competitive with foreign knit garments.  Gropper, 6 CIT 103, 109, 569 F. Supp. 883, 887 (1983).  While the legislative history might suggest that the fabric remained "substantially the same [article] during [the] stages of processing," the court, relying on a case comparing a component part with the finished article, decided that the fabric was not "directly competitive" with the finished product.  Id. at 108-09, 569 F. Supp. at 887 (citing Morristown Magnavox Former Employees v. Marshall, 671 F.2d 194, 198 (6th Cir. 1982).  Yet one may argue that fabric is as much of a component for knit fabric garments as raw cherries or live lambs are components of glace cherries or dressed lamb meat respectively.  Much like the legislative history examples, the fabric constitutes a major percentage of its end product.  In fact, knit fabric garments may even retain the physical form of the fabric like a glace cherry still physically resembles a raw cherry.

[7]In its *Third Remand Determ.*, Labor cited cases addressing whether or not component parts are directly competitive with a complete article to support its limited interpretation of the term, "earlier stage of processing." See, e.g., U. Shoe Workers v. Bedell, 506 F.2d 174, 178, 186 (D.C. Cir. 1974) (holding that

limited construction of the term, "earlier stage of processing."
*Third Remand Determ.* at 12,903.  Applying this definition to the
instant case, Murray's designs for dies may not be considered
"directly competitive" with the dies themselves even if the court
assumed that Murray's customers imported dies.[8]  Nor are they

component parts of an article are not directly competitive with
the imported articles), quoted in U. Steelworkers, 10 CIT at 152-
53, 632 F. Supp. at 22; Morristown Magnavox, 671 F.2d at 197-98
(finding that domestic component parts for television sets are
not directly competitive with foreign television sets); ACTWU
Loc. 1627, AFL-CIO v. Donovan, 7 CIT 212, 217, 587 F. Supp. 74,
78 (1984) (finding that domestic automotive batteries are not
directly competitive with foreign automobiles); Gropper, 6 CIT at
109, 569 F. Supp. at 887 (finding that domestic fabric for knit
fabric garments is not directly competitive with foreign knit
garments).  In doing so, Labor asserted that the 2002 amendments
to the worker adjustment assistance provisions demonstrate that
makers of component parts cannot qualify for certification under
the criteria of section 2272(a), because Congress added paragraph
(b) to authorize TAA certification of workers who produce
component parts for an article produced by another TAA-certified
worker group.  *Third Remand Determ.*, 70 Fed. Reg. at 12,904
(asserting that component parts of an article are not directly
competitive with the article itself).  Labor, therefore,
concluded that the workers' designs cannot be considered
component parts of the designed dies, because a component may be
defined as a physical part of an article that helps the article
to function.  Id.  However, the relevant inquiry here appears to
be whether the workers' designs constitute an "earlier stage of
processing" of the manufactured products and not whether the
designs are "components."  Yet if even a component part cannot be
considered directly competitive, it becomes less likely that an
article which does not comprise any part of the finished product
would.  Labor's "component part" analysis, therefore, indirectly
bolsters its determination that the designs are not directly
competitive with products made from such designs.

[8]For the plaintiffs to prevail, their separation must have
been due to the influence of competing imports.  19 U.S.C. §
2272.  Murray itself did not move any design work overseas during
the relevant time period of 2001 and 2002. See supra note 3 and
accompanying text.  Accordingly, Labor surveyed Murray's major

"directly competitive" with the parts manufactured by the dies or the machinery produced from such dies, which may have produced parts that ended up in constructed automobiles, because, under Labor's interpretation, they cannot be considered to be "an earlier stage of processing."

Labor also noted that the meaning of "directly competitive" has been limited by the Court of International Trade. <u>Sugar Workers Union v. Dole</u>, 14 CIT 861, 867, 755 F. Supp. 1071, 1075 (1990) (announcing that "[i]t is not enough . . . that the imports compete with or affect the . . . product indirectly or circuitously," because Congress intended to protect only those persons and industries displaced by directly competitive imports). This limitation was illustrated in an earlier case, <u>Mach. Printers</u>

---

declining customers to determine the various uses of its designs, and to determine if any of the resulting articles were being imported. *Third Remand Determ.* at 12,904.

Four of Murray's five declining customers responded. Labor's investigation revealed that none of the responding customers had imported articles such as dies, auto parts, or automobiles, for the production of which they formerly purchased designs from Murray. Memorandum to the File from Del-Min Amy Chen, Re: Murray Eng'g, Complete Design, C.R. at 55 (Feb. 10, 2005); Memorandum to the File from Del-Min Amy Chen, Re: Murray Eng'g, Complete Design, C.R. at 53 (Feb. 10, 2005); Memorandum to the File from Del-Min Amy Chen, Re: Murray Eng'g, Complete Design, C.R. at 56 (Feb. 10, 2005); Memorandum to the File from Del-Min Amy Chen, Re: Murray Eng'g, Complete Design, C.R. at 79 (Feb. 24, 2005).

However, Labor did not receive any response from the fifth declining customer, Reinhardt Industries. Without such response, Labor could not conclusively determine whether there were no imports of articles within the designs' chain of productions, although it appears probable that substantial evidence would support such a determination.

& Engravers Ass'n v. Marshall, in which the D.C. Circuit held that imported textile fabrics, which were harming the domestic textile industry, were not directly competitive with engraved rollers and screens made by the workers seeking assistance, and which were used to print patterns on textiles. 595 F.2d 860, 861-62 (D.C. Cir. 1979). Like the imported textile fabrics in Mach. Printers, the articles that are in the chain of production of Murray's design may be considered to be not directly competitive with Murray's designs, because those articles are "neither interchangeable with nor substitutable" for Murray's designs. Id. at 862. Also, like Murray's designs in the instant case, the engraved rollers and screens in Mach. Printers, although necessary for the look or design of the final article, are not incorporated into it. The workers' designs, therefore, may be "'so far removed therefrom in the chain of production as to make them totally unrelated'" to the articles in the design's chain of production. Id. (quoting United Shoe Workers, 506 F.2d at 177).

Moreover, Murray's designs do not "remain[] substantially the same during [the] stages of processing." H.R. Rep. No. 87-1818 at 24 (1962). Murray's designs cannot be "processed directly" into any of the articles in the design's chain of production. Murray's designs, instead, are "wholly transformed into a different article," namely the dies, auto parts, or even cars. Id. Because even components incorporated into a finished article may not be

"directly competitive" with the finished article,[9] Murray's designs are even further removed from being considered "directly competitive" with the articles in the design's chain of production, because the designs are neither processed nor incorporated into those articles.

## 2.   Labor Properly Determined That The Workers Do Not Qualify As Adversely Affected Secondary Workers Under § 2272(b)

Labor found that the workers do not qualify as adversely affected secondary workers under § 2272(b) of the Trade Act, because Murray did not do any business with any TAA-certified company during the relevant time period. *Third Remand Determ.* at 12,905 (revealing that Murray last did business with Lamb Technicon, a TAA-certified company, in 1999). Labor argues that the relevant time period consisted of the two years prior to the former employees' last partial or complete application for benefits. Def.'s Resp. Pl.'s Comments Concerning Third Remand Results at 12 ("Def.'s Resp.").[10] The court has held that Labor may limit its investigation to the two years preceding the workers'

---

[9]See supra note 7 and accompanying text.

[10]Labor cites 19 U.S.C. § 2293(a)(2) to support its limitation of the period of investigation to the two years preceding the last application. That provision states that no adjustment assistance shall be paid "after the close of the 104-week period that begins with the first week following the week in which the adversely affected was most recently totally separated from adversely affected employment." While this provision may lend some support to Labor's determination to choose 2 years, rather than some other period, as its period of investigation, the statute does not mandate this result.

separation.    See Stipe v. U.S. Dep't of Labor, 9 CIT 543, 544

(1985) (citing United Glass & Ceramic Workers v. Marshall, 584 F.2d

398 406-407 (1978), Int'l Union v. Donovan, 8 CIT 13, 18 (1984).[11]

Indeed, some limitation appears reasonable; because Labor can

only certify workers for adjustment assistance as secondarily

affected workers if the loss of business with the certified firm

"contributed importantly" to the workers' separation, there must be

some period in time at which a loss of business becomes too remote

from the separation to be held to "contribute importantly" to such

separation.    However, Int'l Union makes clear that the two-year

period of investigation may not always be adequate, and that

persuasive reasons may be adduced for extending it.

Here, plaintiffs argue that the relevant time period should be

extended, but their arguments are not directed at the secondarily-

affected worker analysis performed by Labor.    Accordingly, the

plaintiffs have not provided a persuasive reason to extend the

---

[11]See, e.g., Former Employees of Federated Merch. Group v.
United States, 29 CIT __, Slip Op. 05-16 at 3, 12 (Feb. 7, 2005),
Former Employees of Kleinerts, Inc. v. Herman, 23 CIT 647, 648,
651, 74 F. Supp. 2d 1280, 1283, 1285 (1996), Former Employees of
Swiss Indus. Abrasives v. United States, 19 CIT 649, 649 (1995),
Former Employees of Hawkins Oil & Gas, Inc. v. U.S. Sec'y of
Labor, 17 CIT 126, 126, 129 (1993), Former Employees of State
Mfg. Co. v United States, 17 CIT 1144, 1145, 835 F. Supp. 642,
642 (1993), Former Employees of Boise Cascade Corp. v. U.S. Sec'y
of Labor, 15 CIT 116, 117 (1991), Former Employees of Baker
Perkins v. United States, 14 CIT 139, 139-40 (1990).

period of investigation with regard to this finding.[12]

## CONCLUSION

Labor's interpretation of 29 C.F.R. § 90.2 holds that articles at different stages of processing are only directly competitive for purposes of the Trade Act of 1974 when both are "substantially the same" and neither has been "wholly transformed into a different article."  This interpretation is based directly on the legislative history of the term "earlier or later stage of

_____

[12]Plaintiffs' arguments regarding the relevant time period are directed rather at showing that prior to 2001, Murray was forced to downsize most of its tooling-design division. According to plaintiffs, sixteen people were employed in the tooling-design division as of 1997, but that only two part-time employees are currently engaged in such work. Moreover, plaintiffs argue that Murray provided tooling work for Chevrolet and Buick, but these companies are now sourcing imported machinery for their plants, contributing significantly to a decline in tooling design work. On the other hand, there is no evidence in the record that any of Murray's die-design customers have had their business decline due to competing imports. See supra note 8.  It remains possible that the decline in tooling-design work could provide a persuasive reason to extend the period of investigation beyond two years.  However, plaintiffs' own description of the tooling-design division as providing designs for automotive machinery demonstrates that the tooling designs suffer the same defect as the die designs. Designs are not directly competitive, under the applicable case law, with other articles in the chain of production.  Although necessary for the production of downstream articles, the designs do not represent an earlier stage of the production of such downstream articles; they are not incorporated physically into the articles, nor do they provide the material substance of such articles.  It therefore appears to the court that tooling-design work has been adequately taken into account above.  Accordingly, although Labor never discussed the question of whether it should extend the relevant time period for its investigation, the question itself is moot.

processing," and is not controverted by any statutory language. The court therefore  upholds Labor's interpretation as in accordance with law.  Moreover, substantial evidence supports Labor's findings that Murray's designs, which are not corporally embodied in any downstream article, are not "substantially the same" as any of those downstream articles. Finally, Murray produced no component parts for a TAA-certified business during the relevant time period. Accordingly, the court affirms Labor's determination.


                                              /s/ Donald C. Pogue
                                              Donald C. Pogue
                                                   Judge


Dated:     June 28, 2005
           New York, New York